**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**HENRY N. HARPER,**                          **CASE NO. 2:14-CV-01220**
                                              **JUDGE GREGORY L. FROST**
     **Petitioner,**                        **MAGISTRATE JUDGE KEMP**

     **v.**

**WARDEN, BELMONT CORRECTIONAL**
**INSTITUTION,**

     **Respondent.**

<u>**REPORT AND RECOMMENDATION**</u>

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court on the Petition (Doc. 3), Petitioner's Motion for Summary Judgment (Doc. 14), Respondent's Response in Opposition (Doc. 21), Petitioner's Reply (Doc. 23), the Return of Writ (Doc. 20), Petitioner's Traverse (Doc. 29), and the exhibits of the parties.

For the reasons that follow, the Magistrate Judge **RECOMMENDS** that Petitioner's Motion for Summary Judgment be **DENIED** and that this action be **DISMISSED.**

**I.  FACTS AND PROCEDURAL HISTORY**

The Ohio Fifth District Court of Appeals, in a superseding opinion filed on October 2, 2013, summarized the facts and procedural history of the case as follows:

> On May 7, 2010 appellant was employed by Little Bear
> Construction which is owned by David Ratliff, it was Friday
> and a pay day. There was a disagreement at work and

appellant left the work sight and went to the home of Mr. Ratliff. Appellant was anxious, excited, and argumentative.

After leaving Mr. Ratliff's residence, appellant arrived at the residence of a friend, Charles Dalton, at approximately 5:30 p.m. At the Dalton residence, appellant was observed to be agitated and in possession of a black handgun.

At approximately 7:30 p.m. appellant's wife, Tina Harper, arrived home from running errands to find her husband drinking and upset. Appellant said to his wife, "Bitch, you're going to take me down there," meaning to Mr. Ratliff's residence. (T. at 287). Appellant was knocking things off the kitchen counter, breaking things, and would not calm down. Appellant knocked a frying pan off the stove and ordered Mrs. Harper to drive him to Mr. Ratliff's home. Appellant stated that he was going to "teach him a lesson." (T. at 288). Mrs. Harper drove appellant and they stopped at different places including a service station and a friend's home.

Mrs. Harper was scared and afraid of appellant. (T. at 287–288.) Appellant threatened his wife during the incident, showing her the butt of his gun while she was driving and waving the gun around next to her. Appellant gave his wife directions to the Ratliff home, telling her that if she pulled over or made a scene he would beat her head in with the gun. Appellant told his wife that he was going to "shoot up" Mr. Ratliff's truck, and when they arrived at the residence, appellant put his arm out the window and Mrs. Harper heard several gunshots.

After this incident, appellant came into contact with a friend Robert Webb, to whom he relayed the information that he had "just shot at some people." (T. at 271).

At 10:27 p.m. on May 7, 2010, the Guernsey County Sheriff's Office received a call regarding shots being fired at the residence of David Ratliff. Upon arrival at the scene, the deputies discovered several spent Winchester 9 mm casings along the roadway in front of the residence. Mr. Ratliff informed the deputies that earlier that day he had a disagreement with appellant regarding some occurrences on a job site.

At approximately 11:30 p.m. on the same night, the deputies were en route to the Sheriff's Office when they received another call regarding a man with a pistol. Upon learning that the subject of the call was appellant, the deputies went to appellant's home. Appellant was not at the residence, but his wife arrived shortly after the deputies, driving a silver S–10 pickup truck. At the time of her arrival at the residence, Mrs. Harper told the deputies that she did not know the current whereabouts of appellant.

Mrs. Harper permitted the deputies to search the residence. During that search, the deputies discovered a partial box of Winchester 9 mm bullets and empty gun boxes. Also on the property, the deputies located a minivan behind a building. The hood of the van was warm as if the van had been recently driven. Mrs. Harper eventually admitted she had driven appellant to the residence of a Mr. Dalton.

Upon arriving at Mr. Dalton's residence, the deputies patted appellant down for weapons. At the Sheriff's Office, appellant submitted to a gunshot residue swab. Appellant was asleep in the holding cell and his right arm was resting underneath his body. When the deputy asked appellant for his left hand in order to conduct the gunshot residue test appellant raise his left arm straight up in the air allowing the deputy to conduct the test. When the deputy asked for his right hand, appellant did not answer or otherwise comply with the request. Appellant tested positive for gunshot residue.

Testimony was introduced at trial that appellant owned a gun and that he had it with him that night. In addition appellant acknowledged that he had been convicted of a felony about twenty-five (25) years before the night in question. Further it was acknowledged that there was no record that was attached or a part of the original case to indicate that appellant had expunged or sealed that record. However, appellant testified that he had purchased guns legally since his previous felony and had gone through records checks for those purchases. He had further passed records checks for federal employment and other jobs that he had held. Finally, appellant testified that he had asked his

attorney to file and seal his record and that he thought that had been done some years before the incidents which occurred May 7, 2010 and which resulted in these charges being filed.

On May 25, 2010, appellant was indicted by the Guernsey County Grand Jury for the following:

Having Weapons While Under Disability in violation of R.C. 2923.13, with a Firearm Specification, a felony of the third degree;

Tampering With Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree.

Discharge of Firearm on or Near Prohibited Premises in violation of R.C. 2923.162, a misdemeanor of the first degree; and

Kidnapping in violation of R.C. 2905.01(A)(1) and (2), with a Firearm Specification, a felony of the first degree.

On October 15, 2010, the jury returned the following verdicts:

GUILTY of Having Weapons While Under Disability in violation of R.C. 2923.13;

NOT GUILTY of Tampering With Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree;

GUILTY of Discharge of Firearm on or Near Prohibited Premises in violation of R.C. 2923.162, a misdemeanor of the first degree; and

GUILTY of Kidnapping, a felony of the second degree.

On November 3, 2010, appellant was sentenced to three years imprisonment for Count 1, six months imprisonment for Count 3, two years imprisonment for Count 4, and three years imprisonment for the Firearm Specification to Count 4. The three year mandatory sentence for the Firearm Specification was ordered to be served first with all

remaining prison terms to be served consecutively, for a total of eight years imprisonment.

Appellant has timely appealed raising three assignments of error: FN1

FN1. Appellant, pro se, attempted to file documents with the Clerk of Courts in this case. He did not request and was not granted leave to file a pro se brief. This brief was filed after the State had filed its brief. Appellant's pro se brief does not show a proper Proof of Service as mandated by App. R. 13. Accordingly, the State had no opportunity to reply to appellant's pro se brief. Additionally, Ohio law prohibits a defendant and his appointed counsel from acting as "co-counsel" *See, State v. Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, 2004–Ohio–5471. Accordingly, we will not address appellant's pro se arguments in the disposition of this appeal.

"I. THE DECISION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

"II. THE TRIAL COURT COMMITTED ERROR BY IMPROPERLY CHARGING THE JURY.

"III. APPELLANT WAS DENIED HIS RIGHT BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL."

*State v. Harper*, 2013 WL 5536938, at *1-3 (Guernsey Co. App. Oct. 2, 2013).  Prior to the issuance of the superseding opinion, which was issued only to correct non-substantive errors, on September 9, 2011, the state appellate court dismissed the appeal.  *State v. Harper*, 2011 WL 4011642 (Guernsey Co. App. Sept. 9, 2011).[1]  On February 1, 2012, the Ohio Supreme Court declined review.  *State v. Harper*, 131 Ohio St.3d 1438 (Feb. 1, 2012).

---

[1] On October 2, 2013, the state appellate court issued an *Opinion Nunc Pro Tunc* to correct scrivener's errors that did not change the substance of the decision.  *See* Doc. 20-1, PageID# 805.  Petitioner filed a "Motion to Object", PageID# 827, and appeal in the Ohio Supreme Court.  PageID# 830-33.  On February 19, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  PageID# 892.

On November 7, 2011, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  Doc. 20-1, PageID# 767.  On November 28, 2011, the appellate court denied the Rule 26(B) application.  *Id.*, PageID# 788.  On December 20, 2011, Petitioner filed a motion to object to the denial and a motion to amend.  *Id.*, PageID# 795, 798.  On January 9, 2012, the appellate court denied the motions.  *Id.,*  PageID# 804.  Detailing other procedural developments, the Fifth District Court of Appeals recited that:

> On November 22, 2011, Petitioner filed a Motion for Sentence Reduction in the trial court. The trial court denied the Motion for Sentence Reduction on January 10, 2012.

> On January 19, 2012, appellant filed a Petition for Post–Conviction Relief. Appellant alleged that the trial court had erred in failing to inform his wife, Tina Harper, that she did not have to testify against appellant, that his trial counsel, Lindsey Donehue, was ineffective in failing to object when appellant's wife was called as a witness against him, and that his property had been illegally searched without a search warrant. Appellant also alleged that his conviction for having weapons while under disability was based on perjured testimony from Detective Sam Williams, that Williams altered appellant's Miranda rights form, that his convictions for kidnapping and having weapons while under disability were against the manifest weight and sufficiency of the evidence, and that his trial counsel was ineffective in failing to obtain any evidence on appellant's behalf or to subpoena witnesses. The trial court denied appellant's petition pursuant on January 25, 2012, finding that the petition was not timely filed.

> Appellant appealed from the trial court's January 10, 2012 Judgment Entry, raising the following assignments of error:

> "I. HAVING WEAPONS WHILE UNDER DISABILITY: IMPROPER DEGREE OF FELONY.

"II. PERJURY OHIO REVISED CODE 2921.11 EVIDNCE [SIC] RULE 602: DETECTIVE SAM WILLAIMS [SIC] COMMITTED PERJURY AT TRIAL UNDER OATH WHEN HE TESTIFIED THAT HE HAD A COPY OF A COMPUTERIZED CRIMINAL HISTORY ON THRE [SIC] APPELLANT HENRY N. HARPER SHOWING A 1985 FELONY CONVICTION ALSO VIOLATING EVIDENCE RULE 602.

"III. CONSECUTIVE SENTENCING OHIO REVISED CODE 2929 .41 WAS IMPROPER DUE TO THE FACT OF JUDICIAL FACT–FINDING MUST OCCUR BEFORE CONSECUTIVE SENTENCES MAY BE IMPOSED UNDER O.R.C. 2929.14(E)(4).

"IV. KIDNAPPING OHIO REVISED CODE 295.01 NO ELEMENTS OF THE CRIME OF KIDNAPPING WERE PROVEN AT TRIAL. THERE IS NO KIDNAPPING VICTIM.

"V. GUN SPECIFICATIO [SIC] OHIO REVISED CODE 2941.145 GUN SPECIFICATION OF O.R.C. IS IMPROPER AND CONTRARY TO LAW. NONE OF THE ELEMENTS FOR A GUN SPEC. O.R.C. 2941.145 WERE PROVEN AT THE TRIAL."

Appellant also appealed from the trial court's January 25, 2012 Judgment Entry, raising the following assignments of error on appeal:

"I. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL: LINDSEY K. DONEHUE.

"II. INCORRECT CHARGE OF DEGREE OF FELONY: PERJURY O.R.C. 2921.11.

"III. UNITED STATES CONSTITUTIONAL RIGHTS VIOLATION AMENDMENT FOUR.

"IV. UNITED STATES CONSTITUTIONAL RIGHT VIOLATION AMENDMENT SIX: [SIC] FIVE, FOURTEEN.

"V. NO EVIDENCE TO SUPPORT THE ELEMENT OF EITHER CRIME WERE PROVEN."

The two cases were assigned Case Nos.2012 CA 000003 and 2012 CA 000008.

Subsequently, via an Opinion filed on July 30, 2012 in *State v. Harper,* 5th Dist. Nos. 12CA000003, 12CA000008, 2012–Ohio–3541, this Court affirmed the judgment of the trial court in both cases on the basis of res judicata.

On March 14, 2012, while the above cases were pending, appellant filed a Second Petition for Post–Conviction Relief. Appellant alleged that police had committed an illegal search and seizure of his home, that his wife, who testified against him, was threatened with criminal charges and was lied to by and illegally detained by police, that Detective Sam Williams tampered with evidence, including appellant's Miranda rights form, and that Williams' trial testimony was inconsistent. Appellant also alleged that there was insufficient evidence supporting the kidnapping charge against him and that his conviction was against the manifest weight of the evidence, and that his trial counsel was ineffective. Appellant also alleged that his bail was excessive and that there was insufficient evidence supporting his conviction for having weapons while under disability.

Pursuant to a Judgment Entry filed on May 17, 2012, the trial court denied appellant's petition, finding that it was not timely filed and that appellant either raised, or could have raised, the same issues in his direct appeal.

Appellant appealed from the trial court's May 17, 2012 Judgment Entry denying his Second Petition for Post–Conviction Relief, raising the following assignments of error:

"I. THE COURT FAILS TO ACKNOWLEDGE FACTUAL FACTS TO SUPPORT THE COURT'S STATEMENTS.

"II. THE COURT FAILS TO ACKNOWLEDGE THE LEGAL DOCUMENTS PROVIDED WITH THE POST–CONVICTION RELIEF.

"III. THE TRIAL COURT FAILS TO ACKNOWLEDGE THE SEVERAL FALSE, INCORRECT, STATEMENTS IN THE STATE OF OHIO'S APPELLEE BRIEF.

"IV. THE TRIAL COURT ERRERED [SIC] IN THE MOTION TO ACQUITTAL (29)(A).

"V. THE TRIAL COUNSEL WAS INEFFECTIVE BY NOT ASKING FOR MOTION FOR ACQUITTAL PROPERLY AND VIOLATIONS OF UNITED STATES CONSTITUTIONAL RIGHT AMEND. SIX."

This Court affirmed the judgment of the trial court on November 5, 2012, finding that the second petition for postconviction relief was untimely, and all issues raised therein were res judicata.

On September 21, 2012, during the pendency of his appeal from the judgment denying his second petition for postconviction relief, appellant filed a petition to vacate or set aside his judgment of conviction and sentence. The trial court denied this petition on September 24, 2012. Appellant appeals, assigning the following errors:

"I. THE SENTENCE IS A VOID SENTENCE AND UNCONSTITUTIONAL SENTENCE AS PURSUANT TO OHIO REVISED CODE 2905.01 KIDNAPPING (A)(1)(2)(A) NO PERSON, BY FORCE, THREAT, OR DECPTION [SIC], OR IN THE CASE OF A VICTIM UNDER THE AGE OF THIRTEEN OR MENTALLY INCOMPETENT, BY ANY MEANS SHALL REMOVE ANOTHER FROM THE PLACE WHERE THE OTHER PERSON IS FOUND OR RESTRAIN THE LIBERTY OF THE OTHER PERSON FOR ANY OF THE FOLLOWING PURPOSES; (1) TO HOLD FOR RANSOM, OR AS A SHEILD [SIC] OR HOSTAGE; (2) TO FACILITATE THE COMMISSION OF ANY FELONY OR FLIGHT THEREAFTER; SEE AFFIDAVIT FROM TINA HARPER NEITHER ELEMENT OF THE CRIME OF KIDNAPPING WHERE [SIC] PROVEN AT TRIUAL [SIC].

"II. THE SENTENCE IS A VOID SENTENCE AND UNCONSTITUTIONAL SENTENCE AS PURSUANT TO OHIO REVISED CODE 2941.145; SPECIFICATION

CONSERNING [SIC] USE OF A FIREARM TO FACILITATE OFFENSE: THERE IS NO PROOF OR EVIDENCE SUPPORTING THE USE OR FACILITATION OF A FIREARM TO COMMIT THE OFFENSE OF KIDNAPPING.

"III. THE SENTENCE IS A VOID SENTENCE AND UNCONSTITUTIONAL SENTENCE AS PURSUANT TO OHIO REVISED CODE 2923.13 HAVING WEAPONS WHILE UNDER DISABILITY: BALDWINS OHIO PRACTRICE [SIC] KATZ & GANNILLEI OHIO CRIMINAL LAWS AND RULES: ELEMENTS OF THE OFFENSE: PENALTY 5TH DEGREE FELONY THERE WHERE [SIC] NO ELEMENTS TO PROVE THAT THE HAVING WEAPONS WHILE UNDER DISABILITY WAS A THIRD DEGREE FELONY."

*State v. Harper*, 2013 WL 1858606, at *1-3 (Guernsey Co. App. April 26, 2013).  On April 26, 2013, the appellate court affirmed the judgment of the trial court.  *Id.*

On September 12, 2014, Petitioner filed a motion for judicial release.  On September 30, 2014, the trial court denied the motion.  Doc. 20, PageID# 1527.

That is not the complete procedural history, however.  "On March 22, 2013, Harper filed a motion in the trial court for 'Grand Jury Transcripts pursuant to Ohio Revised Code 2941.26 Variance.' By Judgment Entry filed April 17, 2013, the trial court denied the motion finding Harper did not demonstrate a particularized need." *State v. Harper,* 2013 WL 4822875, at *2 (Guernsey Co. App. Sept. 9, 2013).  On September 9, 2013, the appellate court affirmed the judgment of the trial court.  *Id.*  On February 19, 2014, the Ohio Supreme Court dismissed the appeal.  *State v. Harper*, 138 Ohio St.3d 1414 (Feb. 19, 2014).

According to the record, on August 10, 2014, Petitioner gave his §2254 petition to prison officials for mailing.  Doc. 3, PageID# 265.  That is its effective filing date.  In the

petition, Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence (claim one); that he was denied a fair trial due to improper jury instructions (claim two); that he was denied the effective assistance of counsel (claim three); and that he was convicted in violation of the Fourth Amendment (claim four). It is the position of the Respondent that this action must be dismissed as barred by the one-year statute of limitations found in 28 U.S.C. §2244(d), and, alternatively, that Petitioner's claims fail to warrant relief.

## II.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides as follows:

> (d) (1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(emphasis added).

It is the position of the Respondent that Petitioner's judgment of conviction became final on May 1, 2012, ninety days after the Ohio Supreme Court's February 1, 2012, dismissal of the appeal, when the time period expired to file a petition for a writ of *certiorari* to the United States Supreme Court.  *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000)(statute of limitations begins to run when the time period expires to file a petition for a writ of *certiorari*).    Respondent maintains that the statute of limitations began to run on the following day, and expired one year later, on May 2, 2013. Respondent also argues that none of Petitioner's collateral or post conviction filings in the state courts tolled the running of the statute of limitations under 28 U.S.C. §2244(d)(2).

Because Petitioner filed a number of attacks on his conviction other than direct appeal, the question of whether any of them tolled the running of the statute of limitations - and, if they did, for how long - deserves close scrutiny.  The Court will consider the effect which each of them had on the running of the statute.

On November 22, 2011, Petitioner filed a motion for reduction of sentence. On January 10, 2012, the trial court denied the motion. On January 19, 2012, Petitioner filed a petition for post conviction relief. On January 25, 2012, the trial court denied the petition as untimely. Petitioner's appeals from these two orders were consolidated, and the Ohio Fifth District Court of Appeals dismissed both of them on the basis of *res judicata* in an opinion and order filed on June 30, 2012. *State v. Harper*, 2012 WL 3158785, at *2-3. The Ohio Supreme Court issued its order declining to review that decision on November 28, 2012. *State v. Harper*, 133 Ohio St.3d 1492 (Nov. 28, 2012). Both of these actions were pending, therefore, from November 22, 2011, until November 28, 2012, when the Ohio Supreme Court dismissed the appeal. Additionally, on September 21, 2012, during the pendency of the appeal on his second post-conviction petition,[2] Petitioner filed yet a third petition for post-conviction relief. On April 26, 2013, the Ohio Fifth District Court of Appeals dismissed the appeal from the denial of that petition on the basis of *res judicata*. *State v. Harper*, 2013 WL 1858606, at *3-4. A threshold question to be answered, therefore, is whether any of these three filings tolled the running of the statute of limitations.

---

[2] Petitioner filed a second post-conviction petition on March 14, 2012. The appellate court dismissed that action as untimely. *State v. Harper*, 2012 WL 5438980, at *4. Consequently, the filing of that petition did not toll the running of the statute of limitations. *See Curry v. Warden, Ohio State Penitentiary*, No. 2011 WL 335665, at *5 (S.D. Ohio Jan. 4, 2011)(citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000); *Allen v. Siebert*, 552 U.S. 3, 5 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)); *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir. 2003)).

In *Artuz v. Bennett*, 531 U.S. 4 (2000), the United States Supreme Court interpreted the "properly filed" language in AEDPA's tolling provision, holding as follows:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. *See, e.g., United States v. Lombardo*, 241 U.S. 73, 76, 36 S.Ct. 508, 60 L.Ed. 897 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed.1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.... But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

*Id*. at 8 (footnote and citation omitted). *Artuz* rejected the state's argument that an application for state post-conviction or other collateral relief is not "properly filed" for purposes of §2244(d)(2) unless it complies with all mandatory state-law procedural requirements that would bar review on the merits. *Id*. at 7. A post-conviction petition dismissed by the state courts as untimely, however, is not "properly filed" under §2244(d)(2) and does not toll the running of the statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *see also Gorman v. Brunsman*, 2006 WL 1645066, at *7 (S.D. Ohio June 7, 2006) (citing *Vroman v. Brigano*, 346 F.3d 598, 603 (6th Cir.2003); *Israfil v. Russell*, 276 F.3d 768, 771–72 (6th Cir. 2001)). On the other hand, a post-

conviction petition denied as barred under Ohio's doctrine *res judicata* may toll the running of the statute of limitations. *See Liles v. Jeffries*, 2008 WL 4812212, at *3 (N.D. Ohio Oct. 30, 2008) (the denial of a motion on the basis of *res judicata* has no bearing on whether the document is properly filed) (citing *Lucas v. Carter*, 46 F.Supp.2d 709, 712 (N.D. Ohio 2009)).  As that Court also said,

> Res judicata has no bearing on whether the document was "properly filed". *Lilies v. Jeffries*, No. 3:06–CV–1917, 2008 WL 4812122, at *3 (N.D.Ohio Oct.30, 2008). The United States Supreme Court has found that an application may be properly filed to toll the habeas limitation period even if it contains procedurally barred claims. *Swingle v. Money*, 215 F.Supp.2nd 919, 922 (N.D.Ohio Aug.12, 2002) (citing *Artuz*, 513 U.S. at 8–9).

*Smith v. Smith*, 2011 WL 3204584, at *5 (N.D. Ohio June 27, 2011).  A motion to suspend or modify sentence may toll the running of the statute of limitations.  *Id.; but see Fleming v. Lazaroff*, 2006 WL 1804545, at *4 (S.D. Ohio June 28, 2006)(motions for judicial release do not toll the running of the statute of limitations).

The best case which Petitioner can make on the statute of limitations issue is that his motion for reduction of sentence and petitions for post-conviction relief tolled the running of the statute of limitations from the date of their filing - which was before the statute began to run under Respondent's calculation - until June 10, 2013, a date forty-five days after the appellate court's April 26, 2013, decision affirming the denial of the petition for post conviction relief, when the time period expired to file an appeal to the Ohio Supreme Court.  *See Campbell v. Warden*, 2009 WL 6594326, at *6 n.4 (S.D. Ohio July

14, 2009).[3]  Under this scenario, the statute of limitations began to run on the following day, and expired one year later, on June 11, 2014.  However, the petition filed in this case was still untimely because Petitioner did not submit it to prison officials for mailing until August 10, 2014.

Still, Petitioner asserts that he timely filed this action because the Ohio Supreme Court did not dismiss his appeal regarding a request for grand jury transcripts until February 19, 2014.  Doc. 29, PageID# 2308.  Additionally, Petitioner contends that his October 15, 2013, objection to the appellate court's *Opinion Nunc Pro Tunc* to correct scrivener's errors tolled the running of the statute of limitations.  *Id.*, PageID# 2308-09.  This Court is not persuaded by either of these arguments.

---

[3]  The Court in *Campbell* noted:

> [A]lthough petitioner did not timely appeal the state appellate court's [] decision affirming the denial of post-conviction relief, the 45–day period in which petitioner could have sought leave to appeal to the Supreme Court of Ohio is included in the tolling calculation. *See, e.g., Martin v. Wilson*, 110 Fed.Appx. 488, 490 (6th Cir. Aug.11, 2004) (not published in Federal Reporter) (citing *Carey v. Saffold*, 536 U.S. 214, 219–20, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002)) (state post-conviction petition was "still 'pending' for purposes of § 2244(d)(2)" during the 30–day period in which the petitioner could have timely appealed the trial court's denial of post-conviction relief); *Gravitt v. Tyszkiewicz*, 35 Fed.Appx. 116, 118 (6th Cir. Jan.24, 2002) (not published in Federal Reporter) (citing *Gibson v. Klinger*, 232 F.3d 799, 804 (10th Cir.2000)) ("Regardless of whether a petitioner actually appeals the denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law."); *cf. Workman v. Wolfenbarger*, Civ. No. 2:08–14101, 2009 WL 236115, at *3 & n. 3 (E.D.Mich. Jan.29, 2009) (unpublished) (taking into account for tolling purposes the period of time in which the petitioner could have sought leave to appeal a state post-conviction ruling, although noting an "apparent conflict" in the Sixth Circuit regarding Michigan's allowance of a one-year period in which to file a delayed application for leave to appeal). *But cf. Lawrence v. Florida*, 549 U.S. 327, 330–36, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007) (tolling under 28 U.S.C. § 2244(d)(2) does not take into account the period of time in which petitioner sought or could have sought federal certiorari review).

In affirming the trial court's denial of the request for grand jury transcripts, the state appellate court indicated as follows:

> Harper made his request for grand jury transcripts nearly three years after the jury returned their verdicts of guilty. Ohio courts, including this court, have held that where "there was no pending matter within the jurisdiction of the trial court involving defendant's criminal case that would necessitate further discovery," a trial court lacks authority to grant a defendant's motion for production of grand jury testimony. *State v. Russell*, 10th Dist. Franklin App. No. 05AP–1325, 2006–Ohio–5945, ¶ 10, citing State v. Short, 8th Dist. Cuyahoga App. No. 83492, 2004–Ohio–2695, ¶ 7 ("With no pending motions that would necessitate further discovery, the judge lacked the jurisdiction to review the particularized need for an in camera inspection"); *State v. Bridgewater,* 10th Dist. Franklin App. No. 12AP–428, 2021–Ohio–6167, ¶ 9; *See also State v. Herring*, 5th Dist. Stark App. No.1996 CA 00385, 1997 WL 219249 (Mar. 17, 1997) (court "unaware of any procedural or substantive rule of law which authorizes the court to, in essence, order post-conviction discovery absent the filing of a post-conviction relief petition supported by appropriate affidavits"). Furthermore, "[t]here is no provision for conducting discovery in the post-conviction process." *State ex Rel. Love v. Cuyahoga County Prosecutor's Office*, 86 Ohio St.3d 279, 281, 1999–Ohio–314, 718 N.E.2d 426(1999).

*State v. Harper*, 2013 WL 4822875, at *3.  Thus, the appellate court noted that there is no provision in Ohio law for consideration of a request for grand jury transcripts made years after the guilty verdict.  Under these circumstances, the Court concludes that the motion was not "properly filed" so as to toll the running of the statute of limitations under §2244(d)(2).  *See Atkinson v. Warden, Chillicothe Correctional Inst.*, 2015 WL 3743016, at *4 (S.D. Ohio June 15, 2015)(motion for reconsideration does not toll the

running of the statute of limitations where state appellate court indicated that there was

"no authority" for the filing of such a motion at the trial court level in a criminal case.)

Even if the motion for grand jury transcripts had been "properly filed," however,

it would not have tolled the running of the statute of limitations.

> "Not every filing by a criminal defendant meant to advance his challenge to a judgment of conviction amounts to an application for ... collateral review of the judgment or claim." *Witkowski v. Vasbinder*, No. 04-CV-74232-DT, 2006 WL 618891, at *4 (E.D.Mich. Mar.9, 2006) (unpublished) (quoting *Rodriguez v. Spencer*, 412 F.3d 29, 36 (1st Cir.2005), cert. denied, --- U.S. ----, 126 S.Ct. 1151, 163 L.Ed.2d 1007 (2006)). As a general rule, a "filing that purports to be an application for State post-conviction or other collateral review with respect to a pertinent judgment or claim must set forth the grounds on which it is based, must state the relief desired, and must collaterally attack the relevant conviction or sentence." *Id*. (citing *Sibley v. Culliver*, 377 F.3d 1196, 1200 (11th Cir.2004), in turn citing *Voravongsa v. Wall*, 349 F.3d 1, 6 (1st Cir.2003), *cert. denied*, 541 U.S. 963, 124 S.Ct. 1724, 158 L.Ed.2d 407 (2004)) (emphasis added). In other words, the application must seek "review" of the "judgment pursuant to which [the petitioner] is incarcerated" to trigger the applicability of § 2244(d)(2)'s tolling provision. *Id*.; *see also Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir.2002), *cert. denied,* 537 U.S. 1236, 123 S.Ct. 1360, 155 L.Ed.2d 202 (2003); *Branham v. Ignacio*, 83 Fed.Appx. 208, 209 (9th Cir. Dec.11, 2003) (not published in Federal Reporter), *cert. denied*, 541 U.S. 1077, 124 S.Ct. 2423, 158 L.Ed.2d 990 (2004); *Johnson v. Lewis*, 310 F.Supp.2d 1121, 1125 (C.D.Cal.2004).
>
> . . . [C]ourts have refused to extend the tolling provision set forth in 28 U.S.C. § 2244(d)(2) to mandamus petitions seeking to have a state court take action on a matter, *Moore*, 298 F.3d at 366-67; *Webb v. Cason*, No. 02-CV-72788-DT, 2003 WL 21355910, at *4 (E.D.Mich. May 30, 2003) (unpublished), *aff'd*, 115 Fed.Appx. 313 (6th Cir. Dec.17, 2004) (not published in Federal Reporter), *cert. denied*, --- U.S. ----, 125 S.Ct. 2919, 162 L.Ed.2d 305 (2005); petitions for executive clemency under state law, *Malcolm v. Payne*, 281 F.3d 951 (9th

> Cir.2002); motions for evidentiary materials and transcripts
> filed with the court, *Lloyd v. VanNatta*, 296 F.3d 630 (7th
> Cir.2002), *cert. denied*, 537 U.S. 1121, 123 S.Ct. 856, 154
> L.Ed.2d 802 (2003); *Hodge v. Greiner*, 269 F.3d 104, 107 (2nd
> Cir.2001); motions for appointment of counsel, *Voravongsa*,
> 349 F.3d at 6-7; and motions to correct the record, *Witkowski*,
> *supra*, 2006 WL 618891, at *4.

*Fleming v. Lazaroff*, 2006 WL 1804546, at *3-4 (S.D. Ohio June 28, 2006)(motions for

judicial release do not toll the running of the statute of limitations).  The Court is not

persuaded that either Petitioner's request for grand jury transcripts or his challenge to

the appellate court's *Opinion Nunc Pro Tunc* to correct scrivener's errors involved

collateral review of his underlying judgment or sentence that tolls the running of the

statute of limitations under 28 U.S.C. §2244(d)(2).

Petitioner nonetheless asserts that equitable tolling of the statute of limitations is

appropriate. *Traverse*, Doc. 29, PageID2309-10.  A petitioner is entitled to equitable

tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that

some extraordinary circumstance stood in his way" and prevented timely filing.

*Holland v. Florida*, 560 U.S. 631, 650 (2010)(citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418

(2005)).  "[P]etitioner bears the ... burden of persuading the court that he or she is

entitled to equitable tolling."  *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.

2002); *Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)

(citations omitted). "Typically, equitable tolling applies only when a litigant's failure to

meet a legally-mandated deadline unavoidably arose from circumstances beyond that

litigant's control." *Id*. at 560–61. The Supreme Court has allowed equitable tolling where

a claimant actively pursued judicial remedies by filing a timely, but defective pleading, or where he was induced or tricked by his opponent's misconduct into allowing the filing deadline to pass. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Where the claimant failed to exercise due diligence in preserving his legal rights, courts are much less forgiving. *Id.; Jurado v. Burt*, 337 F.3d 638, 642–43 (6th Cir. 2003). A prisoner's *pro se* incarcerated status, lack of knowledge regarding the law, and limited access to the prison's law library or to legal materials do not provide a sufficient justification to apply equitable tolling of the statute of limitations. *Hall v. Warden, Lebanon Correctional Inst.*, 662 F.3d 745, 751 (6th Cir. 2011) (citation omitted). These conditions are typical of most habeas corpus petitioners and do not constitute an extraordinary circumstance beyond the Petitioner's control. *Lowe v. State,* 2013 WL 950940, at *7 (S.D.Ohio March 12, 2013) (citing *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir.2004)).

The one-year statute of limitations may also be subject to equitable tolling upon a "credible showing of actual innocence." *Souter v. James*, 395 F.3d 577, 602 (6th Cir. 2005). Accordingly, "a petitioner whose claim is otherwise time-barred may have the claim heard on the merits if he can demonstrate through new, reliable evidence not available at trial, that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt." *Yates v. Kelly,* 2012 WL 487991 (N.D. Ohio Feb. 14, 2012) (citing *Souter,* 395 F.3d at 590). Actual innocence means factual innocence, not mere legal sufficiency. *See Bousely v. United States,* 523 U.S. 614, 623 (1998). Equitable tolling is required upon a showing of actual innocence because the refusal to consider even an untimely habeas petition would cause a fundamental miscarriage of justice. *See*

*Patterson v. Lafler,* 2012 WL 48186, at *3 (6th Cir. Jan. 9, 2012).  The Petitioner must overcome a high hurdle in order to establish his actual innocence, and the record fails to reflect he has done so here.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808.  Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. . . . . "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Id.* at 589–90 (footnote omitted).  A petitioner who asserts a convincing claim of actual innocence need not establish that he was diligent in pursuing this claim.  *McQuiggin v. Perkins,* –– U.S. ––, 133 S.Ct. 1924, 1932–33 (2013).  Unexplained delay, however, still undermines the petitioner's credibility.  The Supreme Court has emphasized that "[t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  *Id.* at 1935 (quoting *Schlup*, 513 U.S. at 332, 327).

The record fails to reflect that any extraordinary circumstance prevented Petitioner from timely filing his federal habeas corpus petition.  The Ohio Supreme Court dismissed Petitioner's appeal in February 2012.  Since that time, Petitioner has engaged in repetitive and futile filings in the state courts, demonstrating that he had the ability to file a petition in this Court had he chosen to do so. He has not shown any circumstances which prevented him from filing a federal habeas corpus petition. Further, Petitioner has failed to provide credible evidence of actual innocence.  Thus, Petitioner has failed to establish he is entitled to equitable tolling on the ground that he is actually innocent.  For all of these reasons, it is apparent that the petition was not filed within the time allowed under the AEDPA.

## III.  RECOMMENDED DISPOSITION

Therefore, the Magistrate Judge **RECOMMENDS** that Petitioner's *Motion for Summary Judgment*, Doc. 14, be **DENIED,** and that this action be **DISMISSED.**

## IV.  PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge